UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CALTON & ASSOCIATES, INC.,
DWAYNE K. CALTON, individually and as
Trustee of the DWAYNE K. CALTON TRUST,
UTA 03/30/1989, RANDALL L. CICCATI,
RAMESHWAR SINGH, DEREK J. CALTON,
LORETTA D. CALTON, GEORGE G.
HARRINGTON, JR., and JILL M. CICCATI.

Plaintiffs,

v. Case No.

JOHN SIMMERS, individually and as trustee
of the SIMMERS FAMILY TRUST DATED 9/18/92

Defendant.
_______________________________________/

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT**
**AND INJUNCTIVE RELIEF SOUGHT**

Plaintiffs file this Complaint, pursuant to 9 U.S.C. § 4, seeking a declaratory judgment and preliminary and permanent injunctive relief to preclude Defendant from proceeding with an arbitration they have filed before the Financial Industry Regulatory Authority ("FINRA") against Plaintiffs and directing that arbitration proceed before the American Arbitration Association as required by the written agreements Defendant seeks to enforce, and state:

**THE PARTIES**

1. Plaintiff Calton & Associates, Inc. ("CAA") is a broker-dealer licensed with FINRA, and its principal place of business is in Tampa, Florida.

2. Plaintiff Dwayne K. Calton, individually and as Trustee of the Dwayne K. Calton Trust UTA 03/30/1989, is a citizen of Texas. Dwayne K. Calton is a CAA broker licensed with FINRA.

3. Plaintiff Randall L. Ciccati is a citizen of Florida. He is a CAA broker licensed with FINRA.

4. Plaintiff Rameshwar Singh is a citizen of Florida. He is a CAA broker licensed with FINRA.

5. Plaintiff Derek J. Calton is a citizen of Florida. He is a CAA broker licensed with FINRA.

6. Plaintiff Loretta D. Calton is a citizen of Florida. She is not a broker and has never been licensed with FINRA.

7. Plaintiff George G. Harrington, Jr. is a citizen of Florida. He was a broker but retired in 2015 and is not licensed with FINRA.

8. Plaintiff Jill Ciccati is a citizen of Florida. She is not a broker and has never been licensed with FINRA.

9. Defendant Simmers, individually and as Trustee of the Simmers Family Trust dated 9/18/9 (collectively, "Simmers" or "Defendants"), is a citizen of California. Simmers is and has been a CAA broker licensed with FINRA.

**JURISDICTION AND VENUE**

10. This is an action pursuant to 9 U.S.C. § 4 for an Order directing an arbitration to proceed in the manner provided for in the written agreements Simmers seeks to enforce, for

declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Federal Rule of Civil Procedure 57, and for injunctive relief pursuant to Federal Rule of Civil Procedure 65.

11. The United States District Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Respondent, and the amount of controversy exceeds the sum or value of $75,000.00. Simmers' FINRA Statement of Claim ("SOC") alleges as follows: "[t]he Option Contracts valued Calton & Associates at about $10 million based on the price per share" ¶ 58; Simmers "tendered a $1.7 million check made out to the Dwayne K. Calton Trust. . . ." ¶ 60; "[t]he Sellers breached their Option Contracts with Simmers by engaging in the trade of 20% of Calton & Associates stock to Randy Ciccati and Singh because they failed to afford him with the benefits of either his option or his right of first refusal." ¶131; and that 20% is valued at $2 million. See Ex.1 at ¶ 58. And, Simmers seeks damages beyond those transactions for purported conspiracy to commit fraud, breaches of fiduciary duty, and unjust enrichment.

12. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs' request for an injunction and declaratory judgment necessarily presents questions of federal law, inasmuch as the SOC seeks injunctive relief for alleged violations of federal securities laws "including but not limited to the Securities Act of 1933; the Securities Exchange Act of 1934; the Investment Advisers Act of 1940; Rules 10b-5, 15c3-1, 15c3-3, 17a-3, 17a-4, 17a-5, and 17a-11; Rules 1017 and 3280; Form CMA; Form BD; and Form ADV." ¶ 137, see also ¶¶ 212, 347, 352.

13. This Court has personal jurisdiction over Simmers because Simmers contractually consented to its jurisdiction. Specifically, the contracts sued upon and attached to the SOC provide as follows:

a. 2011 Stock Purchase Agreement, Section 9.11: "The Parties agree that courts of competent jurisdiction in Hillsborough County, Florida and the United States District Court for the Middle District of Florida, Tampa division shall have exclusive concurrent jurisdiction with the arbitration tribunals of the American Arbitration Association for purposes of entering temporary, preliminary and permanent injunctive relief with regard to any action arising out of any breach or alleged breach of this Agreement. The Parties agree to submit to personal jurisdiction of such courts and any other applicable court within Hillsborough County, Florida." Ex. 1 at 127.

b. 2011 Stock Option Agreement Section 6(k)(i): "The Parties agree that courts of competent jurisdiction in Hillsborough County, Florida and the United States District Court for the Middle District of Florida, Tampa division shall have exclusive concurrent jurisdiction with the arbitration tribunals of the American Arbitration Association for purposes of entering temporary, preliminary and permanent injunctive relief with regard to any action arising out of any breach or alleged breach of this Agreement." Ex. 1 at 177.

c. 2012 Memorandum of Understanding Section (C)(12): "The Parties agree that courts of competent jurisdiction in Tampa, Hillsborough County, Florida shall have jurisdiction for equitable relief or to compel arbitration or enforce an arbitration award hereunder. The Parties agree to submit to the personal jurisdiction of such courts." Ex. 1 at 148.

d. 2013 Binding Agreement, Paragraph 11: "The Parties agree that courts of competent jurisdiction in Hillsborough County, Florida and the United States District Court for the Middle District of Florida, Tampa Division shall have exclusive concurrent jurisdiction with the arbitration tribunals of the American Arbitration Association for purposes of entering temporary, preliminary and permanent injunctive relief with regard to any action arising out of any breach or alleged breach of this BA. The Parties agree to submit to personal jurisdiction of such courts and any other applicable court within Hillsborough County, Florida" Ex. 1 at 157.

e. 2014 Stock Option Agreement Paragraph 8: "The Parties agree that courts of competent jurisdiction in Hillsborough County, Florida and the United States District Court for the Middle District of Florida, Tampa Division shall have exclusive concurrent jurisdiction with the arbitration tribunals of the American

> Arbitration Association for purposes of entering temporary, preliminary and permanent injunctive relief with regard to any action arising out of any breach or alleged breach of this BA. The Parties agree to submit to personal jurisdiction of such courts and any other applicable court within Hillsborough County, Florida." Ex. 1 at 161.

14. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391 because this is where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

**NATURE OF THE ACTION**

15. This is an action to enjoin an arbitration that Simmers brought against Plaintiffs before FINRA.[1] Simmers filed with FINRA on December 27, 2019.[2] The issues before this Court mainly deal with the arbitrability of the FINRA action where the contracts under which Simmers sues require arbitration before the American Arbitration Association ("AAA").

16. For Simmers to compel each Plaintiff to arbitrate before FINRA, he must establish that: a) each Plaintiff chose to arbitrate in that forum by written agreement; b) he is a "customer" under FINRA Rules of each Plaintiff; or c) each Plaintiff is a broker or member firm and that this is a dispute between brokers involving the business activities of Plaintiffs who are brokers undertaken in their capacity as an associated person of the FINRA member.[3]

17. None of those are present here because: 1) the contracts unambiguously require any disputes to be brought before AAA and those the contracts supersede any FINRA rule to arbitrate; 2) Simmers is a broker and FINRA Rules proscribe his being a customer for purposes

---

[1] John Simmers individually and as trustee of the Simmers Family Trust v. Randall Ciccati, et. al., FINRA No. 19-03833 (the "FINRA Arbitration").

[2] The Demand for Arbitration and Statement of Claim is attached hereto as **Exhibit "1."**

[3] "Broker-dealer" is used herein to be synonymous with "member firm;" and broker is used herein to be synonymous with "associated person."

of FINRA jurisdiction—and while he claims his trust is a "customer" of CAA, the stock at issue was not bought or sold by CAA; and, 3) some of the Plaintiffs are not brokers and cannot be required to arbitrate before FINRA and this dispute does not involve the business activities of any of the parties as brokers; or CAA as a broker dealer.

18. The SOC avers that Simmers has rights under these six (6) separate agreements (the "Agreements"):

a. The 1987 Agreement Restricting Transferability referenced in the 2011 Stock Purchase Agreement (Ex. 1 at 79);
b. The 2011 Stock Purchase Agreement (Ex. 1 at 94);
c. The 2011 Stock Option Agreement (Ex. 1 at 132);
d. The 2012 Memorandum of Understanding (Ex. 1 at 142);
e. The 2013 Binding Agreement (Ex. 1 at 154); and,
f. The 2014 Stock Option Agreement (Ex. 1 at 160).

19. Simmers is not a party to the first three (3) Agreements, a, b, and c above.

20. Aatria, LLC,[4] the company through which Simmers was able to directly or indirectly obtain the CAA stock, is conspicuously missing as a party to the SOC. That is because Aatria, LLC already brought actions on the first three (3) Agreements, a, b, and c above, in AAA, lost; and is currently attempting to vacate that AAA award in state court in Hillsborough County, Florida.

21. The litigation and arbitration initiated by Simmers (and his family) and Aatria, LLC, is as follows:

a. Aatria, LLC sued Plaintiffs in Hillsborough County, Florida Circuit Civil Court;

[4] Last summer Simmers indicated on his broker disclosure form that he intended to act as Aatria's vice president.

b. Plaintiffs moved to dismiss on the ground that AAA arbitration was required;

c. Aatria filed a Demand for Arbitration in AAA in Hillsborough County, Florida on three of the Agreements and all of the Agreements were in evidence;

d. Aatria lost the AAA arbitration and is seeking to vacate the award in Hillsborough County, Florida Circuit Civil Court;

e. Simmers filed a state court shareholder derivative suit in Hillsborough County, Florida on behalf of CAA against Plaintiffs based on the same transactions as in the FINRA arbitration;

f. Simmers' son (also a FINRA broker), and his daughter, filed a direct state-court lawsuit in Hillsborough County, Florida on the same transactions complained of in the FINRA arbitration; and

g. Simmers filed the FINRA Arbitration requesting arbitration in Tampa, Florida.

22. The Agreements giving rise to Simmers' claims contain forum selection clauses that provide that "all controversies, claims, disputes and matters in question arising out of, or related to, this Agreement, the breach of this Agreement, interpretation of this Agreement, the purchase of the Sellers' Securities pursuant to this Agreement or any other matter or claim whatsoever, including statutory claims, common-law claims tort claims and choses in equity, shall be decided by binding arbitration before the American Arbitration Association, utilizing its Commercial Rules." (*See* attached Exhibit 1, Demand for Arbitration, at Exhibits A-F.)

23. No such "determination" that FINRA rules and regulations supersede any agreement to arbitrate before the AAA was made; and, in fact, the law is that they do not.

**FACTUAL BACKGROUND**

24. Sometime in early 2011, Scott Sherwood, a broker, and the owner and manager of Aatria, LLC, decided he wanted to purchase some CAA stock.

25. Shareholders of CAA, Dwayne K. Calton, individually and as Trustee of the Dwayne K. Calton Trust, UTA 03/30/1989, Derek J. Calton, Loretta D. Calton, George G. Harrington, Jr., agreed to sell their personal stock in CAA to Aatria, LLC.

**The 2011 Stock Purchase Agreement and 2011 Stock Option Agreement**

26. Simmers seeks declaratory relief (Count II), injunctive relief Count III), and damages (Count IV) as to the 2011 Stock Purchase Agreement and 2011 Stock Option Agreement. SOC ¶¶ 243-266; 278-288.

27. Simmers is not a party to the 2011 Stock Purchase Agreement, the 2011 Stock Option Agreement, or the 1987 Agreement he alleges was incorporated.

28. The only purchaser under the 2011 Stock Purchase Agreement and the 2011 Stock Option Agreement was Aatria, LLC. Aatria, LLC is not a broker registered with FINRA, and is not a customer of Plaintiffs.

29. In May, 2011, the then shareholders of CAA (Dwayne K. Calton, The Dwayne K. Calton Trust, Derek J. Calton, Loretta D. Calton, George G. Harrington, Jr., Sandra G. Harrington, and Crystal D. Brown) (collectively, the "Selling Shareholders") and Aatria, LLC entered into two agreements: the 2011 Stock Purchase Agreement and the 2011 Stock Option Agreement.

30. Under the 2011 Stock Purchase Agreement, the Selling Shareholders agreed to sell Aatria 10% of CAA stock.

31. Under the 2011 Option Agreement, Aatria had the right to exercise various options to purchase additional shares up to 80% of the company because the Selling

Shareholders were granted the right to elect to retain 20% of the Company (the "Retained Shares").

32. From October 1, 2011 through May 1, 2014, Aatria exercised its option to purchase 80% of the CAA shares from the Selling Shareholders.

33. The Selling Shareholders elected to retain the 20% Retained Shares at that time, and then sold those shares in 2016.

34. Of the 80% that Aatria purchased, Aatria directed that 24% of that 80% be transferred to Simmers, who then accepted the shares in the names of his trust and his adult children.

35. Despite not being a party to either agreement, Simmers now claims he has a right to purchase the retained 20% stock "pursuant to Article 3.28 of the [2011] Stock Purchase Agreement" and in "in accordance with the Agreement Restricting Transfer [the 1987 Agreement], as incorporated into the [2011] Stock Purchase Agreement, [2011] Stock Option Agreement, and [2012] Memorandum of Understanding as the 'Company Document.'" Ex. 1, SOC at ¶¶ 249, 258.

36. Neither Simmers nor Plaintiffs Randall L. Ciccati, Rameshwar Singh, or Jill Ciccati are parties to the 2011 Stock Purchase Agreement or the 2011 Stock Option Agreement.

37. Yet, Simmers now seeks damages in his Demand for Arbitration for breach of the 2011 Stock Purchase Agreement and 2011 Stock Option Agreement; and seeks specific performance for alleged breaches of those agreements in 2016, despite not being a party to them and despite being barred by Florida's one-year statute of limitations for specific performance. § 95.11(5)(g), Fla. Stat.

38. Additionally, Simmers has filed a Florida state court shareholder derivative case, in which he is suing purportedly on behalf of CAA, to obtain the exact same 20% retained shares as he seeks here directly.

39. To the extent that Simmers has any claim arising out of the 2011 Stock Purchase Agreement or 2011 Stock Option Agreement through Aatria, Aatria already arbitrated before AAA and lost on these very same contracts; in which the parties explicitly agreed that any dispute would be brought before the AAA:

> Stock Purchase Agreement Section 9.11(d)
>
> The Parties agree that all controversies, claims, disputes and matters in question arising out of, or related to, this Agreement, the breach of this Agreement, interpretation of this Agreement, the purchase of the Sellers' Securities pursuant to this Agreement or any other matter or claim whatsoever, including statutory claims, common-law claims tort claims and choses in equity, shall be decided by binding arbitration before the American Arbitration Association, utilizing its Commercial Rules. Venue for any arbitration between the Parties shall be had and is mandatory in Hillsborough County, Florida to the exclusion of all other places of venue, for all matters that arise under or are related to this Agreement. In the event it is determined that FINRA rules and regulations supersede any agreement to arbitrate before the American Arbitration Association, Buyer hereby specifically instructs the FINRA Director of Arbitration to assign administration of all arbitration claims to the FINRA Boca Raton, Florida office (and any successor thereof) and to designate that the final hearing location be Tampa, Hillsborough County, Florida.

40. To the extent that Simmers has any claim arising out of the 2011 Stock Option Agreement, the parties explicitly agreed that any dispute would be brought before the AAA, unless it is determined that FINRA rules supersede any agreement to arbitrate:

41. 2011 Stock Option Agreement section 6(k)(v):

> The Parties agree that all controversies, claims, disputes and matters in question arising out of, or related to, this Agreement, the breach of this Agreement, interpretation of this Agreement, the purchase of the Option Shares I and II pursuant to this Agreement or any other matter or claim whatsoever, including statutory claims, common-law claims, tort claims and choses in equity, shall be decided by binding arbitration before the American Arbitration Association utilizing its Commercial Rules. Venue for any arbitration between the Parties shall be had and is mandatory in Hillsborough County, Florida to the exclusion of all other places of venue, for all matters that arise under or are related to this agreement. In the event it is determined that FINRA rules and regulations supersede any agreement to arbitrate before the American Arbitration Association, Buyer hereby specifically instructs the FINRA Director of Arbitration to assign administration of all arbitration claims to the FINRA Boca Raton, Florida office (and any successor thereof) and to designate the final hearing location be Tampa, Hillsborough County, Florida.

42. The Parties to the 2011 Stock Purchase Agreement and 2011 Stock Option Agreement already agreed, and in fact arbitrated, in AAA.

43. Aatria, LLC is a necessary and indispensable party to any action brought under the 2011 Stock Purchase Agreement and 2011 Stock Option Agreement.

44. Counts XII and XIII to the SOC are shareholder derivative claims.

45. To the extent the SOC contains a shareholder derivative claim on behalf of CAA, FINRA has no jurisdiction.

**Simmers Transfers his Broker License to CAA**

46. In or about August 2011, Simmers became a registered broker at CAA.

47. In or about April 2012, Simmers opened up a CAA brokerage account for the Simmers Family Trust (Simmers Trust").

48. In the Trust's brokerage account opening forms, Simmers listed *himself* as the registered broker at CAA responsible for the Simmers' Trust's account.

49. Simmers also checked the box on the account opening form stating that he makes his own investment decisions.

50. Simmers also named himself as his own broker for the Simmers Trust's Margin Account Agreement and Options Account.

51. The account for the Trust also lists Simmers' wife, Margaret Simmers, as Co-Trustee of the Simmers Trust.

52. Margaret Simmers is not a party in the FINRA Arbitration, either individually or as Co-Trustee.

53. None of the transactions or agreements described in the SOC relate to the Simmers Trust's accounts at CAA.

54. At no time were shares Simmers obtained bought, sold, or held in the Simmers Trust's accounts at CAA.

**The 2012 Non-Binding Memorandum of Understanding**

55. In September of 2012, John Simmers, individually, executed a non-binding Memorandum of Understanding ("Memorandum"), which indicated that Simmers might purchase CAA stock.

56. The SOC seeks specific performance (Count III), declaratory judgment (Count II), and damages for breach (Count IX). Ex D. to the SOC.

57. The stated purpose of the Memorandum was to provide non-binding guidance to the parties in operating the business to recruit potential financial services representatives and the potential ownership structure of the business:

> 17. The Parties hereto acknowledge and agree that this Memorandum does not bind them to any particular course of conduct: but rather, is intended to provide a general understanding and outline for the conduct of future business.

58. The Memorandum chose this Court for equitable relief and expressly chose the AAA as the forum:

> Section (C)(12) - The Parties agree that courts of competent jurisdiction in Tampa, Hillsborough County, Florida shall have jurisdiction for equitable relief or to compel arbitration or enforce an arbitration award hereunder. The Parties agree to submit to the personal jurisdiction of such courts. Ex. 1 at 148.

> Arbitration - The Parties agree that all controversies, claims, disputes and matters in question arising out of, or related to this Memorandum, the performance under this Memorandum, the alleged breach of any term of this Memorandum or any other matter or claim whatsoever, including but not limited to common law claims, tort claims, choses in equity and statutory claims, shall be decided by binding arbitration before the American Arbitration Association. utilizing its Securities or Commercial Rules, as applicable. Venue for any arbitration between the Parties shall be had and is mandatory in Tampa, Hillsborough County, Florida to the exclusion of all other places of venue, for all matters that arise under or are related in any manner to this Memorandum. In the event it is determined that FINRA rules and regulations supersede any agreement to arbitrate before the American Arbitration Association, the Parties hereby specifically instruct the FINRA Director of Arbitration to assign administration of all arbitration claims to the FINRA Boca Raton, Florida office (and any successor thereof) and to designate that the final hearing location be Tampa, Hillsborough County, Florida.

59. Simmers admits that the arbitration clause applies to him. SOC ¶ 55.

60. Aatria, Scott Sherwood, and Keith Gregg are necessary and indispensable parties to the Memorandum but were unnamed in the SOC.

61. Simmers' claims under the Memorandum are not customer industry disputes under FINRA rules.

62. And, by executing the Memorandum Simmers expressly selecting AAA arbitration over FINRA, Simmers waived any right he had to FINRA Arbitration.

**The 2013 Binding Agreement**

63. Simmers seeks declaratory judgment (Count IV), specific performance (Count V), and damages (Count VI) for breach of the Binding Agreement. Ex E. to the SOC.

64. The parties to the Binding Agreement include Aatria, Innovation Equity Partners, LLC, Simmers, Keith Gregg, Randall Ciccati, Rameshwar Singh, Scott Sherwood, and IEP LLC.

65. Simmers did not name Aatria, Innovation Equity Partners, LLC, Keith Gregg, or Scott Sherwood, as parties to the FINRA Arbitration.

66. Under the Binding Agreement, Aatria, LLC offered to make its shares available for sale to Innovation Equity Partners, LLC.

67. In SOC Counts IV through VI, Simmers only sued Randy Ciccati and Rameshwar Singh.

68. To the extent that Simmers has any claim arising out of the 2013 Binding Agreement, the parties explicitly agreed that any dispute would be brought before the American Arbitration Association in Hillsborough County, Florida unless FINRA rules supersede any agreement to arbitrate:

> Each of the Parties agree that all controversies, claims, disputes and matters in question arising out of, or related to this BA, the breach if this BA, or any other matter or claim whatsoever, including but not limited to common law claims, tort claims, choses in equity and statutory claims, shall be decided by binding arbitration before the American Arbitration Association. utilizing its Securities or Commercial Rules, as applicable. Venue for any arbitration between the Parties shall be had and is mandatory in Tampa, Hillsborough County, Florida to the exclusion of all other places of venue, for all matters that arise under or are related in any manner to this BA. In the event it is determined that FINRA rules and regulations supersede any agreement to arbitrate before the American Arbitration Association, each of the Parties hereby specifically instruct the FINRA Director of Arbitration to assign administration of all arbitration claims to the FINRA Boca Raton, Florida.

69. The Binding Agreement explicitly identifies AAA. FINRA is not the agreed-upon forum. Also, there has been no determination that any FINRA rule supersedes this choice of forum provision between owners of a broker-dealer.

70. The claims under in the SOC regarding the Binding Agreement are not customer or industry disputes under FINRA rules.

71. And, in executing the Binding Agreement expressly selecting AAA arbitration over FINRA, Simmers waived any right he had to FINRA Arbitration.

**The 2014 Stock Option Agreement**

72. Simmers seeks rescission of the 2014 Stock Option Agreement in Count I of the Statement of Claim, alleging that he was fraudulently induced to sell CAA stock to Randall Ciccati, Rameshwar Singh, and Jill Ciccati. SOC at ¶ 222-242.

73. The parties to the 2014 Stock Option Agreement include Aatria, LLC, (a seller) Simmers and Margaret Simmers as trustees for the Simmers Trust dated 9/18/92 (a seller), and Randall Ciccati and Jill M. Ciccati JTWROS (a seller) and Rameshwar Singh (as purchaser).

74. In the rescission count, Simmers only sued Randy Ciccati and Rameshwar Singh.

75. Simmers failed to name Aatria, Innovation Equity Partners, LLC, Keith Gregg, Scott Sherwood, or IEP LLC as parties to the FINRA Arbitration.

76. To the extent that Simmers has any claim arising out of the 2014 Stock Option Agreement, the parties explicitly agreed that any dispute would be brought before the American Arbitration Association:

> The Parties agree that all controversies, claims, disputes and matters in question arising out of, or related to this Agreement, the breach if this Agreement, or any other matter or claim whatsoever, including but not limited to common law claims, tort claims, choses in equity and statutory claims, shall be decided by binding arbitration before the American Arbitration Association, utilizing its Securities or Commercial Rules, as applicable. Venue for any arbitration between the Parties shall be had and is mandatory in Tampa, Hillsborough County, Florida to the exclusion of all other places of venue, for all matters that arise under or are related in any manner to this Agreement. In the event it is determined that FINRA rules and regulations supersede any agreement to arbitrate before the American Arbitration Association, each of the Parties hereby specifically instruct the FINRA Director of Arbitration to assign administration of all arbitration claims to the FINRA Boca Raton, Florida office (and any successor thereof) and to designate that the final hearing location will be Tampa, Hillsborough County, Florida.

77. The agreement explicitly identifies AAA as the proper forum. FINRA is not the agreed-upon forum. And, there has been no determination that any FINRA rule supersedes this choice of forum provision between experienced businessmen and owners of a broker-dealer negotiating an arms-length transaction.

78. Simmers' claims under the 2014 Stock Option Agreement are not customer or industry disputes under FINRA rules.

79. And, in executing the 2014 Stock Option Agreement expressly selecting AAA arbitration over FINRA, and Simmers waived any right he had to FINRA Arbitration.

**This is not a Customer Dispute under FINRA Rule 12200.**

80. In December 2019, roughly two and a half years after Aatria lost its AAA arbitration, and long past the expiration of the statutes of limitation governing specific performance, Simmers filed the SOC with FINRA, thereby instituting arbitration proceedings against Plaintiffs. FINRA gave notice to Plaintiffs of the SOC in February 2020.

81. FINRA arbitrations are governed under two codes depending on whether the dispute is a "customer dispute" or an "industry dispute."

82. The SOC claims it involves both a Customer Dispute under FINRA Rule 12200 and an Industry Dispute under FINRA Rule 13200. SOC ¶1-2.

83. FINRA Rule 12200 requires arbitration under the FINRA code when a customer dispute arose out of the business activities of a member or an associated person, and is either required by a written agreement or requested by the customer.

84. The FINRA Customer Code expressly provides that a "customer shall not include a broker or dealer." FINRA Rule 12100(i).

85. Simmers was at all material times a broker, and therefore cannot be a customer.

86. Knowing that he cannot be a customer by definition, he attempted to plead around the problem in his SOC: "As an associated person of CAA, John Simmers recruited

financial services representatives to associate with the Member Firm but did not act as a broker or dealer." SOC, ¶ 41.

87. Simmers also alleged that "[w]hen John Simmers, in his capacity as trustee of the Simmers Trust, first purchased CAA stock, he became a customer of the Member Firm." SOC ¶ 61.

88. Contrary to his assertion in SOC ¶ 61 above, Simmers acted as the CAA broker for his Trust.

89. The SOC does not allege, nor could it, that Simmers was a customer of any Plaintiff; but does claim to be a customer of party CAA. SOC ¶ 7.

90. Contrary to his assertion in SOC ¶ 61 above, none of these purchases were from CAA; nor were the shares sold, purchased, or held in Simmers Trust's account at CAA.

91. CAA is only named in Count XIII of the SOC.

92. Thus, as pleaded, Simmers is not even a customer of CAA under Counts I through XI of the SOC.

93. Count XIII, the only Count against nominal party CAA, is brought by Simmers "in various capacities." SOC ¶¶ 348-358.

94. However, Count XIII does not involve customer issues but rather management and regulatory issues.

95. Count XIII is in reality a shareholder's derivative suit.

96. Simmers could only bring a shareholder derivative suit as a shareholder—not as a customer.

97. Shareholder derivative suits are barred by FINRA Rule 12205.

98. Therefore, Simmers is not a customer, as defined by Rule 12200, of any Plaintiff for <u>any</u> purpose in the SOC.

99. Simmers' claims are also not arbitrable in FINRA because the disputes did not arise out of Plaintiffs' business activities undertaken in their capacities as associated persons.

100. The transfer of shares of CAA are <u>not</u> business activities in the regular course of CAA business:

a. These shares have never been approved by CAA for sale to the general public;
b. These shares are not part of CAA's public or institutional broker-dealer business;
c. These shares are not offered pursuant to a prospectus or subscription agreement;
d. These shares do not have a CUSIP number and are not registered with the SEC;
e. These shares are closely held and not offered through any broker-dealer;
f. These shares do not have an independent transfer agent; and,
g. It would be a conflict of interest for CAA to offer its own shares to the public.

101. FINRA Rule 12200 must be construed in a predictable manner so as not to upset "the reasonable expectations of [FINRA] members." Yet the SOC attempts to do exactly that.

**This is not an industry dispute under FINRA Rule 13200.**

102. FINRA Rule 13200 governs industry disputes and requires arbitration under the FINRA code when a dispute arises out of the business activities of a member or an associated person and is between or among brokers.

103. There are multiple Plaintiffs (and parties to the agreements omitted from the SOC) who are not brokers or customers and are not subject to any jurisdiction in FINRA.

a. Plaintiff Jill Ciccati is not an associated person, is not a customer on these transactions, and is not subject to jurisdiction in FINRA.

b. Plaintiff Loretta Calton is not an associated person, is not a customer on these transactions, and is not subject to jurisdiction in FINRA.

c. Plaintiff George Harrington is no longer an associated person, and is not a customer on these transactions. He retired on December 31, 2016, terminated his registration, and is not associated with any member firm. Pursuant to FINRA Rule Section 4, FINRA's jurisdiction ended after a two-year retention period on December 31, 2018.

d. Plaintiff Dwayne K. Calton Trust is not an associated person, is not a customer on these transactions, and is not subject to jurisdiction in FINRA.

e. Unnamed Aatria, LLC is a signatory to the 2011 Stock Purchase Agreement and 2011 Stock Option Agreement, is not an associated person with FINRA, and is not subject to jurisdiction in FINRA.

f. Unnamed Margaret Simmers, as Trustee of the Simmers Trust, is a signatory to certain agreements. Margaret Simmers is not an associated person with FINRA and is not subject to jurisdiction in FINRA.

g. Unnamed Crystal Brown is a signatory to the 2011 Stock Purchase Agreement and 2011 Stock Option Agreement, is not an associated person with FINRA, and is not subject to jurisdiction in FINRA.

104. Additionally, the owner and seller of the stock is the Simmers Trust, not Simmers individually. The Simmers Trust is a separate legal entity and is not an associated person with FINRA.

105. Even if all parties to the agreements were brokers, the claims in this case would still not be arbitrable in FINRA because the activities are not business activities of an individual undertaken in their capacity as an associated person.

106. Simmers can only bring a FINRA Arbitration under Rule 13200 if every party is an associated person and if every party was an associated person and undertook the specific activity alleged in their capacity as an associated person of CAA.

107. Agreements in which Simmers agreed to buy ownership or sell ownership of CAA are not business activities of an associated person merely because CAA happens to be a broker-dealer.

108. The purpose of the agreements at issue were to determine the personal ownership of CAA, which happens to be a broker-dealer. Plaintiffs purchased or sold their personal shares in the company. They were not acting as a broker. The fact that the purchaser of 80% of CAA is neither a broker nor is registered with FINRA proves that this is not an industry dispute.

109. CAA is not a public company and its brokers are not in the business of buying and selling its own stock.

110. Simmers claims that he has a right to purchase 20% of CAA pursuant to a contract. That right to purchase 20% is not an activity regulated by FINRA.

111. The Parties expressly contemplated that the FINRA Rules may apply and agreed that a dispute would only be arbitrated in a FINRA Forum if it is determined that FINRA Rules supersede the agreement to arbitrate.

112. The relief Simmers seeks in the FINRA Arbitration consists of declaratory, injunctive, specific performance, and actual, compensatory, punitive, and consequential damages.

113. Simmers' claims and theories are specious, particularly in light of his own disclosures and information at his disposal. Plaintiffs and Simmers never agreed to arbitrate disputes arising out of these agreements in FINRA. To the contrary, the agreements specifically

provide that any disputes arising out of Simmers' claims shall be brought, if at all, before the American Arbitration Association—not FINRA.

114. Plaintiffs' answer to Simmers' SOC is currently due on April 20, 2020, which it intends to file with FINRA solely in order to avoid the possibility of defaulting in the FINRA Arbitration. Plaintiffs' answer will expressly reserve Plaintiffs' right to object to the arbitrability of Simmers' claims before FINRA.

**COUNT I**

**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF SOUGHT**

115. Plaintiffs reallege and therefore incorporates paragraphs 1 through 114 as though fully set forth herein.

116. This is an action seeking declaratory and injunctive relief against Simmers, in his individual capacity and as Trustee.

117. Plaintiffs are in need of declaratory relief as to arbitrability of the SOC.

118. Simmers' claims concern specific performance and declaratory relief for the following contracts:

a. The 2011 Stock Purchase Agreement and 1987 Agreement referenced therein;

b. The 2011 Stock Option Agreement;

c. The 2012 non-binding Memorandum of Understanding;

d. The 2013 Binding Agreement; and

e. The 2014 Stock Option Agreement.

119. All parties to the above-referenced agreements contractually agreed to litigate claims in AAA Arbitration.

120. AAA Arbitration is the proper forum for Simmers to bring his claims against Plaintiffs because the agreements giving rise to Simmers' claims contain forum and venue selection clauses that provide that all actions shall be decided by binding arbitration before the American Arbitration Association, utilizing its Commercial Rules unless it is determined that FINRA Rules and Regulations supersede the agreements to arbitrate.

121. The Parties to the 2011 Stock Purchase Agreement, 2011 Stock Option Agreement, and 1987 Agreement have already arbitrated the issues raised in the SOC in AAA Arbitration.

122. Even if Simmers had not contractually agreed to arbitrate his claims before AAA, there still would be no basis for bringing his claims before FINRA.

123. There are no FINRA Rules or Regulations that supersede the agreements to arbitrate.

124. Pursuant to Rule 12200 of FINRA's Code of Arbitration Procedure for Customer Disputes, which governs the arbitrability of disputes by a FINRA arbitration panel, FINRA members such as CAA must submit to arbitration only where each of the following conditions are met: (1) FINRA arbitration is either (a) required by agreement, or (b) requested by the "customer"; (2) the dispute is between a "customer" and a member or associated person of a member; and (3) the dispute arises in connection with the business activities of the member or the associated person. These conditions are not met with respect to a dispute between Plaintiffs and Simmers.

125. Pursuant to Rule 13200 of FINRA's Code of Arbitration Procedure for Industry Disputes, which governs the arbitrability of disputes by a FINRA arbitration panel, FINRA

members such as CAA must submit to arbitration only where each of the following conditions are met: (1) FINRA arbitration is either required by agreement; or (b) the dispute is between an "associated person" and a member or associated person of a member; and (2) the dispute arises in connection with the business activities of the member or the associated person. These conditions are not met with respect to a dispute between Plaintiffs and Defendant Simmers.

126. The SOC has named parties over whom FINRA has no jurisdiction.

127. The SOC is missing necessary and indispensable parties, for which FINRA has no jurisdiction.

128. It is well-settled law in Florida that a court determines the arbitrability of a claim, and under the terms of the Agreements, this Court is the parties' chosen forum. Here, the Agreements do not clearly and expressly preclude this Court from determining arbitrability.

129. As a matter of law, unless Defendants are enjoined from pursuing their claims in the FINRA Arbitration, Plaintiffs will suffer irreparable harm because they will: (1) be deprived of their right to select the forum in which the parties expressly agreed to resolve disputes; (2) be forced to arbitrate a dispute overs agreements in which Defendants were not a party; (3) be forced to arbitrate a contract dispute in a forum strictly designed to resolve securities disputes; and (4) be forced to incur the substantial time and expense of defending themselves in the arbitration proceeding, or risk an adverse outcome in those proceedings, even though Plaintiffs are not legally compelled to arbitrate Defendants' stale claims. Being compelled to arbitrate a dispute in a forum where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

130. Plaintiffs are without adequate remedy at law and are in need of the equitable relief of a declaratory judgment.

131. There is a bona fide, actual, present and practical need for the declaration, and the declaration will deal with present, ascertained or ascertainable state of facts, or present controversy as to a state of facts.

132. The parties have or reasonably may have, an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests are all before the court; and that the relief sought is not merely the giving of legal advice by the courts or the answers to questions propounded from curiosity.

133. The dispute between the parties over the arbitrability of the SOC is critical. The powers, privileges, and rights of Plaintiffs depend on the facts and the law that apply to those facts as described above.

134. All persons with an adverse and antagonistic interest are before the Court.

135. The declaration sought does not amount to mere legal advice.

136. Declaratory relief from this Court will resolve this controversy.

137. As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, duties and liabilities of the parties.

138. Plaintiffs therefore request a declaratory judgment from this Court pursuant to 28 U.S.C. Section 2201 et. Seq. and Rule 57 of the Federal Rules of Civil Procedure that Defendants' claims are not arbitrable and that Defendants must bring their claims, if at all, in AAA Arbitration or before this Court.

139. The balance of equities weighs heavily in favor of an injunction.

140. The public interest would be served by enjoining Defendants from pursuing their meritless claims against Plaintiffs in the FINRA Arbitration because the Agreements preclude arbitration of this dispute in FINRA.

141. Plaintiffs have a substantial likelihood of success on the merits regarding the arbitrability of Simmers' claims because:

a) The parties to the agreements expressly agreed to a forum selection clause;
b) Some of the parties are not associated persons subject to FINRA jurisdiction;
c) Some of the claims have already been arbitrated in AAA Arbitration;
d) Simmers is missing necessary and indispensable parties that are not registered with FINRA;
e) Simmers is not a customer under FINRA Rule 12200; and,
f) The dispute is not an industry dispute under FINRA Rule 13200;

142. Plaintiffs will suffer immediate and irreparable harm if they are compelled to arbitrate the claims in the FINRA Arbitration.

143. Accordingly, Plaintiffs satisfy the legal standards for preliminary and permanent injunctive relief in Federal Rule of Civil Procedure 65, and Simmers should be enjoined from proceeding with the Arbitration.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order declaring that:

(a) FINRA is not the appropriate forum to resolve the disputes between Plaintiffs and Defendants pursuant to the agreements;

(b) Simmers individually and as Trustee of the Simmers Trust, are not "customers" of any of the Plaintiffs for purposes of his claims;

(c) Non-associated person Plaintiffs cannot be compelled to arbitrate in FINRA;

(d) This is not a "customer dispute" under FINRA Rule 12200;

(e) This is not an "industry dispute" under FINRA Rule 13200;

(f) FINRA has no jurisdiction to adjudicate the FINRA Arbitration; and

(g) Plaintiffs are entitled to a stay of the FINRA arbitration and a preliminary and permanent injunction preventing Defendants from pursuing any claims against Plaintiffs in the FINRA Arbitration;

(h) awarding Plaintiffs costs of suit and attorney's fees, if appropriate; and

(i) Granting such other and further relief as may be just and proper.

Respectfully submitted,

*s/ Robert Persante*

Robert Persante, Esq., T.A. - FBN: 376698
Zackary T. Zuroweste, Esq. - FBN: 28707
Darren M. Stotts, Esq. - FBN: 107221
Jade L. Turner, Esq. – FBN: 1018997
PERSANTE ZUROWESTE
2555 Enterprise Road, Suite 15
Clearwater, Florida 33763-1118
Email: firm@persantelaw.com
Tel: 727-796-7666 Fax: 727-796-8099
Counsel for Plaintiffs

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Dwayne K. Calton, declare the following:

1. I verify under penalty of perjury that the foregoing is true and correct.

Dated this 13TH day of April 2020.

Dwayne K. Calton