UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CALTON & ASSOCIATES, INC.,
DWAYNE K. CALTON, individually
and as Trustee of the DWAYNE K.
CALTON TRUST, UTA 3/30/1989,
RANDALL L. CICCATI,
RAMESHWAR SINGH, DEREK J.
CALTON, LORETTA D. CALTON,
GEORGE G. HARRINGTON, JR., and
JILL M. CICCATI,

    Plaintiffs,

v.                        Case No. 8:20-cv-851-VMC-CPT

JOHN SIMMERS, individually and as
Trustee of the SIMMERS FAMILY
TRUST DATED 9/18/92,

    Defendant.

_____/

**ORDER**

    This matter is before the Court on consideration of Plaintiffs' Motion to Confirm Interim Arbitration Award (Doc. # 59), filed on June 22, 2022, Defendant John Simmers' Petition to Vacate Arbitration Award (Doc. # 71), filed on September 4, 2022, and Simmers' Petition to Vacate the Fee Award (Doc. # 82), filed on November 21, 2022. The Motions have been fully briefed. (Doc. ## 66, 69, 77, 81, 85). For

1

the reasons detailed below, the Motion to Confirm is granted and the Petitions to Vacate are denied.

## I.   **Background**

The Court and the parties are familiar with the facts underlying this action, and thus the Court need not outline them again.

In December 2019, Simmers filed a thirteen-count complaint before the Financial Industry Regulatory Authority ("FINRA") against Dwayne Calton, both individually and as Trustee of his trust, Randall Ciccati, Jill Ciccati, Singh, Derek Calton, Loretta Calton, and Harrington. (Doc. # 1-1). Simmers brought claims related to multiple agreements, including the 2012 Memorandum of Understanding ("MOU"), the 2013 Binding Agreement, and the 2014 Stock Option Agreement, which involved the purchase of stock in the registered broker-dealer Calton & Associates, Inc. See (Id.).

On April 14, 2020, Plaintiffs CAA, Dwayne K. Calton, both individually and as Trustee of the Dwayne K. Calton Trust, Singh, Derek Calton, Loretta Calton, Harrington, Randall Ciccati, and Jill Ciccati filed this lawsuit seeking a declaratory judgment and injunctive relief against Simmers, individually and as Trustee of the Simmers Family Trust. (Doc. # 1). Specifically, Plaintiffs sought a declaratory judgment

2

that Simmers' claims are not arbitrable before FINRA. (Doc. # 1 at ¶ 138, pp. 26-27). Plaintiffs also sought an injunction imposing a stay of the FINRA arbitration and preventing Simmers from pursuing any claims against Plaintiffs in the FINRA arbitration. (Id. at 27).

On May 22, 2020, Simmers filed a motion to compel arbitration and to dismiss or, in the alternative, stay case (Doc. # 19), seeking an order from this Court compelling arbitration of his claims before the FINRA dispute resolution forum and dismissing this case. The Court denied that motion on August 17, 2020, because the AAA was the appropriate entity "to determine if FINRA rules and regulations supersede the parties' agreements" to arbitrate before the AAA. (Doc. # 33 at 16). Plaintiffs then moved to compel arbitration before the AAA (Doc. # 35), which the Court granted on October 6, 2020. (Doc. # 49).

The parties then initiated arbitration before the AAA. The arbitrator held that the AAA was the proper arbitral forum, and granted Plaintiffs a preliminary injunction on March 22, 2021, enjoining the FINRA arbitration. (Doc. # 71-12). In that order, the arbitrator wrote that, "[p]ursuant to the parties' agreements and their various arbitration clauses, this matter is properly before the AAA" and "FINRA

3

rules and regulations do not supersede the parties' agreements to arbitrate before the AAA." (Id. at 2). The FINRA panel thus dismissed Simmers' claims and Simmers then filed a Counterclaim in the AAA arbitration. (Doc. # 59 at 2).

Subsequently, a thirteen-day arbitration final hearing was held. (Id.). During the hearing, Simmers relied in part on an order entered by Judge Bergmann in Dwayne Calton's divorce case in April 2005. In that order, Judge Bergmann addressed the method of valuing the Calton & Associates, Inc. stock to be divided between Dwayne Calton and his wife. (Doc. # 71-3). Judge Bergmann ruled that the transfer restrictions and valuation method outlined in the Agreement Restricting Transferability ("ART") should not apply in the divorce action. (Id. at 3). However, Judge Bergmann held that the ART "will continue to apply as to any transfer by [Dwayne Calton] and/or [Calton's wife] to a third party, that is not by operation of law." (Id. at 4).

Also during the hearing, Simmers attempted to introduce portions of a deposition transcript of Mr. Persante — Plaintiffs' counsel in this case — that was taken in relation to an earlier arbitration between Plaintiffs and Aatria. The arbitrator denied Simmers' request to read portions of the transcript into the record. He noted that excluding the

4

transcript prevented prejudice to Plaintiffs by keeping their counsel from becoming a witness in the case but still allowed Simmers to "point or read or put in any portion of the record, whether it be from the divorce case or from the other arbitration and other proceedings, that [Simmers] believe[d] [would] point out and establish some[] inconsistency or argument that [he] want[ed] to make." (Doc. # 74-2 at 1208).

The arbitrator entered an Interim Award in favor of Plaintiffs on all counts and resolving all issues in the case, besides Plaintiffs' attorney's fees and costs, on June 7, 2022. (Doc. # 59 at 2; Doc. # 59-1). The Arbitrator ruled in favor of Plaintiffs on their sole count on jurisdiction and related injunctive relief and denied all 14 counts brought by Simmers in his Counterclaim. In addition to granting the declaratory judgment in Plaintiffs' favor that the AAA was the proper forum for the dispute, the arbitrator entered "a permanent injunction to prevent Simmers from refiling in FINRA the claims asserted in this action or similar claims on the same contracts at issue." (Doc. # 59-1 at 4).

The Court will further outline only those portions of the Interim Award most related to Simmers' arguments for vacatur. The arbitrator held that Simmers did not have "standing to enforce the ART, SPA ['the Stock Purchase

Agreement'], or SOA ['the Stock Option Agreement']" because the MOU that Simmers signed did not make him a "Buyer" under the SPA or SOA. (Id. at 8). The arbitrator also concluded that "Aatria is a necessary and indispensable party to this proceeding" and denied Simmers' counterclaims related to the option contracts "for failure to name an indispensable party." (Id. at 11). Likewise, Simmers had not met his burden of "proving the extraordinary relief of specific performance or rescission by clear and convincing evidence." (Id. at 12).

The arbitrator further held that the ART had been "truly ignored, waived, and abandoned" by the stockholders before the Simmers Family Trust purchased stock in the company. (Id. at 11). After pointing to significant evidence regarding the many free transfers among shareholders and outsiders in violation of the ART, the arbitrator concluded: "The evidence is clear that the Company and its shareholders waived the notion of any restrictions since inception and when restrictions are long ignored, they are waived. . . . Here Simmers, who refused to be bound by the ART, remarkably seeks to bind those who never enforced it in more than 30 years. Simmers presents no authority in law or equity for the Company's restricting 20% of the shares yet allowing 80% to

freely trade." (Id. at 11-12). The Court need not outline the other aspects of the arbitrator's Interim Order.

Two weeks later, Plaintiffs filed their Motion to Confirm Interim Arbitration Award in this Court. (Doc. # 59). While the Motion to Confirm was pending, the arbitrator issued on August 22, 2022, his Final Award, which incorporates the Interim Award and awards total fees of $788,048.95 for Plaintiffs, including attorney's fees of $602,503.50, $123,855.45 in taxable costs, and $61,690.00 for the arbitrator's costs and expenses. (Doc. # 77 at 2; Doc. # 78-1). Regarding his ability to tax fees and costs, the arbitrator wrote: "The arbitration agreements entered into between the above-named parties incorporate the Commercial Arbitration Rules of the [AAA] and those rules become part of the agreement to arbitrate." (Doc. # 78-1 at 2). He also noted that all parties had "requested an award of attorney's fees and costs prior to the Final Hearing and Interim Award for this matter." (Id. at 2-3).

Simmers subsequently filed his Petition to Vacate Arbitration Award on September 4, 2022, arguing that the arbitration award should be vacated for multiple reasons. (Doc. # 71). Simmers also filed a Petition to Vacate the Fee

Award on November 21, 2022. (Doc. # 82). The Motions are fully briefed (Doc. ## 66, 69, 77, 81, 85), and ripe for review.

## II.  **Legal Standard**

"The Federal Arbitration Act ('FAA'), 9 U.S.C. § 1, <u>et seq.</u>, imposes a heavy presumption in favor of confirming arbitration awards." <u>Riccard v. Prudential Ins. Co.</u>, 307 F.3d 1277, 1288 (11th Cir. 2002). "Section 9 of the FAA provides that, upon application of any party to the arbitration, the court *must* confirm the arbitrator's award unless it is vacated, modified, or corrected in accordance with sections 10 and 11 of the statute." <u>Frazier v. CitiFinancial Corp., LLC</u>, 604 F.3d 1313, 1321 (11th Cir. 2010) (emphasis in original).

Section 10 of the FAA permits vacatur of an arbitration award only:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final,

8

and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Additionally, "[t]he FAA sets forth certain threshold requirements that must be satisfied before a district court can entertain a petition for enforcement of an arbitration award." Vital Pharms. v. PepsiCo, Inc., 528 F. Supp. 3d 1304, 1307-08 (S.D. Fla. 2020) (citing 9 U.S.C. § 9). "First, the party seeking confirmation of the award must do so within one year of the date the award was made." Id. at 1308. "Second, because the FAA does not confer subject matter jurisdiction upon district courts, the district court must have an independent basis for jurisdiction." Id. "Third, an arbitration award must be sufficiently final before a district court may review it." Id.

### III. **Analysis**

As a preliminary matter, the FAA "controls the determination of this proceeding to confirm the arbitration award, because the subject transaction involved interstate commerce." PriMed, Inc. v. Dallas Gen. Life Ins. Co., No. 8:11-cv-2002-VMC-AEP, 2012 WL 646221, at *1 (M.D. Fla. Feb. 28, 2012). "The FAA applies if the transaction involves interstate commerce, even if the parties did not contemplate

interstate commerce." Id. (citing Rewards Hotel Mgmt. Co., LLC v. Elite Gen. Contractors, Inc., 860 So. 2d 1011, 1013 (Fla. 3d DCA 2003)). "This is the case even where an arbitration agreement has a choice of law provision specifying that Florida law controls." Id. Here, Plaintiffs persuasively argue that the FAA controls. And, notably, Simmers argues that "there is no difference between the" FAA and the Florida Arbitration Code "in this matter." (Doc. # 71 at 12). Thus, the Court will apply the FAA in resolving the Motions.

## A.  **Prerequisites to Confirmation**

First, the Court determines that the three threshold requirements for confirmation of the arbitration awards are met. Indeed, Simmers did not challenge any of these requirements in his response to the Motion to Confirm. (Doc. # 66).

Plaintiffs' Motion to Confirm was filed within one year of the June 2022 issuance of the Interim Award. Next, the Court has diversity jurisdiction over this case. As alleged in the complaint and supplemental notice, there is complete diversity between Plaintiffs and Simmers. (Doc. # 1 at 1-2; Doc. # 87; Doc. # 89-1). Likewise, the amount in controversy exceeds $75,000 because Simmers had alleged in his FINRA

10

statement of claim that Plaintiffs breached their options contracts with Simmers, under which Simmers had paid $1.7 million, and that the stock Plaintiffs allegedly wrongfully transferred was valued at $2 million. (Doc. # 1 at 3).

The third requirement — that the award be sufficiently final — is also met. The Interim Arbitration Award resolved the substantive claim in this case and left unresolved only the issue of attorney's fees and costs. See (Doc. # 59-1 at 19) ("This Award is in full resolution of all claims submitted to the Arbitrator. . . . The Arbitrator reserves jurisdiction to determine entitlement and amount of any claims for attorney's fees, costs, and for the assessment of forum fees based upon the findings in this Interim Order and Award of Arbitrator."); see also Publicis Commc'n v. True N. Commc'ns, Inc., 206 F.3d 725, 729 (7th Cir. 2000) ("These cases show that although the Federal Arbitration Act uses the word award in conjunction with finality, courts go beyond a document's heading and delve into its substance and impact to determine whether the decision is final.").

Regardless, since the Motion to Confirm was filed, the Final Award was issued on August 22, 2022. (Doc. # 78-1). The Final Award, which resolves the final matter in the arbitration, was issued before Simmers filed his Petition to

11

Vacate on September 4, 2022, and Simmers has since filed a separate Petition to Vacate the Fee Award. Thus, the arbitration is completely resolved and the parties have had the opportunity to brief every aspect of the arbitral award. Both the Interim Award and the Final Award are final such that they may be confirmed.

Because these requirements have been met, the Court must confirm the arbitration awards unless Simmers establishes that vacatur is required under one of the FAA's limited reasons for vacatur.

B.   **Vacatur Arguments for Interim Award**

Simmers raises three arguments to vacate the arbitral award. According to Simmers, "[t]he Arbitrator exceeded his powers by relieving Dwayne Calton (and the stockholders he represented) from Judge Bergmann's Order, refused to hear Mr. Persante's voluntary deposition testimony referencing the Restriction Agreement, and lacked jurisdiction to hear the substantive dispute because FINRA rules superseded the agreement to arbitrate before AAA." (Doc. # 71 at 12).

All three arguments fail.

### 1.   <u>Jurisdiction of AAA</u>

Simmers argues: "The Arbitrator's award should [] be vacated because the Arbitrator exceeded his powers by ruling that this dispute should be arbitrated in AAA as the evidence showed that this was instead a dispute in which the 'FINRA rules and regulations supersede.'" (Doc. # 71 at 22). He highlights FINRA Rule 13200, which requires a dispute between members or associated persons be arbitrated in FINRA's arbitration forum "if the dispute arises out of the business activities of a member or an associated person" unless FINRA's rules create an exception, as the rule that allegedly supersedes the parties' contractual agreement to arbitrate before the AAA. Thus, Simmers reasons, the arbitrator "lacked jurisdiction over this dispute from its inception because the arbitration agreements provided that if [FINRA] rules supersede any agreement to arbitrate before AAA, the parties would arbitrate before FINRA." (Doc. # 71 at 4).[1] Simmers

---

[1] Simmers notes in his Petition that the arbitrator did not elaborate in his written order on his finding that the AAA was the proper arbitral forum under the various arbitration provisions, besides stating that "FINRA rules and regulations do not supersede the parties' agreements to arbitration before the AAA." (Doc. # 71 at 22). Even if the Court were to assume for the sake of argument that this was not a sufficient explanation of the arbitrator's reasoning, "[w]here an arbitrator fails to articulate the rationale for his decision, [courts] will overturn the award only when it is

appears to base this argument on Section 10(a)(4), which provides that vacatur is appropriate if the arbitrator "exceeded their powers." 9 U.S.C. § 10(a)(4).

"While a federal court may vacate an arbitration award when it 'exceeds the scope of the arbitrator's authority,' few awards are vacated because the scope of the arbitrator's authority is so broad." Wiregrass Metal Trades Council AFL-CIO v. Shaw Env't & Infrastructure, Inc., 837 F.3d 1083, 1087 (11th Cir. 2016) (citations omitted). "The arbitrator acts within [his] authority when [he] even arguably interprets a contract, and [he] exceeds [his] authority when [he] modifies the contract's clear and unambiguous terms." Id. at 1088; see also Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013) ("Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.").

---

'apparent' that the arbitrator exceeded his authority. 'A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.'" Barclays Cap. Inc. v. Urquidi, 786 F. App'x 970, 973 (11th Cir. 2019) (quoting Wiregrass Metal Trades Council AFL-CIO v. Shaw Env't & Infrastructure, Inc., 837 F.3d 1083, 1091 (11th Cir. 2016)).

This Court previously held that the AAA was the entity empowered to determine arbitrability of the parties' dispute based upon the language of the arbitration provisions. See (Doc. # 33 at 14) ("[T]he Court finds that the language in the arbitration clauses incorporating the commercial arbitration rules of the AAA clearly and unmistakably evidences the parties' intent that the arbitrator rule on gateway issues of arbitrability."). That is, the Court has already ruled that the AAA arbitrator had the power to determine whether the parties' dispute should be arbitrated before the AAA or FINRA. The Court sees no reason to reconsider its prior ruling on this issue, and the arbitrator did not exceed his authority in determining that he should decide the arbitrability question.

Likewise, the arbitrator here did not exceed his powers in ruling that the AAA was the proper forum to resolve the parties' dispute. Such determination was based on the arbitrator's reading of the arbitration provisions and his legal conclusion that FINRA rules did not supersede the arbitration clauses. (Doc. # 71-12 at 2). While Simmers casts his argument as concerning jurisdiction, he is actually challenging the legal correctness of the arbitrator's determination that the AAA was the proper forum. Although

Simmers maintains that the arbitrator erred in concluding
that the AAA was the proper forum, the FAA does not permit
this Court to "look to the legal merits of the underlying
award." White Springs Agric. Chemicals, Inc. v. Glawson Invs.
Corp., 660 F.3d 1277, 1283 (11th Cir. 2011) ("These points on
appeal essentially involve the same argument: the panel
exceeded its powers by acting contrary to the law. We cannot,
however, review the panel's award for underlying legal error.
Even though White Springs presents its argument in terms of
the FAA, it asks us to do what we may not — look to the legal
merits of the underlying award." (citations omitted)).

For this reason, Simmers' argument concerning the
arbitrator's decision on the arbitrability issue fails. See
Barclays Cap. Inc. v. Platt, No. 15-21850-CIV, 2018 WL
10759189, at *4 (S.D. Fla. Dec. 26, 2018) ("As this Court
finds that the issues related to whether Respondents owed
anything under the promissory notes was properly before the
arbitration panel, this Court declines to review the legality
of the panel's award."), aff'd sub nom. Barclays Cap. Inc. v.
Urquidi, 786 F. App'x 970 (11th Cir. 2019).

## 2.   **Judge Bergmann's Order**

Simmers also argues that the Arbitrator "reached beyond
the issues properly before him by finding that the CAA

16

stockholders did not historically follow the Restriction Agreement and accordingly issued a ruling that relieved Dwayne Calton from the obligations of Judge Bergmann's Order." (Doc. # 71 at 13-14). This argument has two parts.

First, according to Simmers, the "Arbitrator lacked jurisdiction to relieve Dwayne Calton from Judge Bergmann's Order because Dwayne Calton never sought relief from that Order directly." (Id. at 14). He insists the Interim Award "overrules Judge Bergmann's Order, without even mentioning the Order, by ruling that the Sellers including Dwayne Calton were not directly bound by the Restriction Agreement." (Id. at 16). Second, Simmers contends that the Arbitrator "exceeded his powers by making findings based on Plaintiffs' collateral attack of Judge Bergmann's Order." (Id.). Again, Simmers appears to rely on Section 10(a)(4), which provides that vacatur is appropriate if the arbitrator "exceeded their powers." 9 U.S.C. § 10(a)(4).

Again, "[w]hile a federal court may vacate an arbitration award when it 'exceeds the scope of the arbitrator's authority,' few awards are vacated because the scope of the arbitrator's authority is so broad." Wiregrass Metal Trades Council AFL-CIO, 837 F.3d at 1087 (citations omitted). Arguments that an arbitrator "exceeded its powers

17

by acting contrary to the law" are to no avail. White Springs Agric. Chemicals, Inc., 660 F.3d at 1283. This is because courts cannot review an arbitrator's award "for underlying legal error" and cannot "look to the legal merits of the underlying award." Id.

Here, after interpreting the language of the various agreements, the arbitrator held that Simmers lacked standing to enforce the ART because he was not a party to the ART, the SPA and MOU did not incorporate the ART, and the MOU did not make Simmers a party to the SPA. (Doc. # 59-1 at 7-9). Likewise, the arbitrator held that Simmers' claims related to the various agreements must be dismissed for failure to include the indispensable party Aatria. (Id. at 9-10). These were the primary reasons the arbitrator denied Simmers relief for his claims involving the SPA, SOA, MOU, and ART, and these reasons are not affected by the existence of Judge Bergmann's order in the divorce case. Thus, Simmers cannot show that the arbitrator exceeded his powers by finding in favor of Plaintiffs despite Judge Bergmann's order.

Even as to the arbitrator's additional ruling that the ART's transfer restrictions were waived and abandoned because the parties to the ART never followed them, Simmers has not shown that the arbitrator exceeded his powers. Simmers'

argument regarding Judge Bergmann's order essentially posits that the arbitrator made a legal error when the arbitrator did not hold that Judge Bergmann's order precluded a finding that the ART was waived. That is, Simmers asks this Court to do what it cannot — "look to the legal merits of the underlying award." White Springs Agric. Chemicals, Inc., 660 F.3d at 1283.

Simmers fails to overcome the presumption in favor of confirming the arbitration award based on this argument.

### 3.   Mr. Persante's Deposition

According to Simmers, the Arbitrator "exacerbated his jurisdictional error of reaching the issue of the historical treatment of the Restriction Agreement by refusing to hear Simmers' evidence material to that issue." (Doc. # 71 at 19). Simmers insists that the arbitrator should have allowed him to read into the record certain excerpts from the transcript of Mr. Persante — Plaintiffs' counsel in this case — that were taken during the separate arbitration between Plaintiffs and Aatria, LLC. (Id. at 20). "The Arbitrator denied that request [to read in portions of the transcript] over Simmers' objection that the exclusion of the evidence prejudiced his case." (Id.).

Section 10(a) permits vacatur "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). But "an award is only vacated for refusing to consider evidence when an arbitrator's error is 'in bad faith or so gross as to amount to affirmative misconduct.'" Fowler v. Ritz-Carlton Hotel Co., LLC, 579 F. App'x 693, 698 (11th Cir. 2014) (quoting United Paperworkers Inten. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 (1987)); see also Pochat v. Lynch, No. 12-22397-CIV, 2013 WL 4496548, at *10 (S.D. Fla. Aug. 22, 2013) ("With respect to Section 10(a)(3) in particular, courts have emphasized that this subsection does not warrant vacatur where an arbitrator merely made an erroneous discovery or evidentiary ruling; rather, a plaintiff must show that the arbitrator's handling of these matters was in bad faith or so gross as to amount to affirmative misconduct, effectively depriving the plaintiff of a fundamentally fair proceeding."). The Court is mindful that "[a]rbitrators enjoy wide latitude in conducting an arbitration hearing, and they are not constrained by formal rules of procedure or evidence." Rosensweig v. Morgan Stanley & Co., 494 F.3d 1328, 1333 (11th Cir. 2007) (citation and internal quotation marks omitted). "In addition, [a] federal

court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings." Id. (citation and internal quotation marks omitted).

Here, the arbitrator explained that the deposition should not be introduced because it was essentially cumulative. (Doc. # 74-2 at 1205-08). He noted that (1) Plaintiffs had stipulated to the entire record of the divorce case, (2) the parties could direct the arbitrator to relevant evidence because "[a]ll of the underlying facts, records, arguments before tribunals, whether it be to the court or to arbitrators, have been transcribed," and (3) the arbitrator did not believe that "any additional facts that are not in those records and any legal argument that [Mr. Persante] would have made or representation that he would have made to a tribunal that [Simmers] might find to be troubling or significant" would exist. (Id. at 1205-06). The arbitrator highlighted that this ruling prevented prejudice to Plaintiffs by keeping their counsel from becoming a witness in the case but still allowed Simmers to "point or read or put in any portion of the record, whether it be from the divorce case or from the other arbitration and other

proceedings, that [Simmers] believe[d] [would] point out and establish some[] inconsistency or argument that [he] want[ed] to make." (Id. at 1208).

Such reasoning does not constitute a gross error that would warrant vacatur, as there was a reasonable basis for the arbitrator's evidentiary ruling. Furthermore, Simmers has not presented any evidence that the arbitrator acted in bad faith in reaching this ruling. Finally, as Plaintiffs point out (Doc. # 77 at 16), Simmers merely identifies a single brief passage from the deposition that he considers important — Mr. Persante's statement that he "certainly would have made sure [whatever he told the judge in the divorce action] was right." (Doc. # 71 at 21; Doc. # 71-11 at 84). Simmers has not shown that he suffered prejudice from the exclusion of this testimony.

### C.   <u>Vacatur Arguments for Fees and Costs</u>

Finally, Simmers seeks to vacate the Final Award's award of attorney's fees and costs for Plaintiffs. (Doc. # 82). He argues this award should be vacated because

> (1) the AAA Arbitrator ("Arbitrator") exceeded his powers by awarding fees that were not in his jurisdiction; (2) AAA Commercial Arbitration Rule 47(d)(ii), which authorizes 'an award of attorneys' fees if all parties have requested such an award,' does not create an independent basis for awarding fees to a prevailing party in an arbitration

22

> proceeding that does not otherwise exist in statute
> or contract; and (3) based on the documents that
> were filed in the Arbitration, there was no
> adequate fee-shifting provision(s) to cause Simmers
> to be responsible for the entire amount of
> attorneys' fees, taxable costs, and administrative
> expenses.

(Doc. # 82 at 2). Thus, it appears that Simmers is basing this Motion on Section 10(a)(4), which provides that vacatur is appropriate if the arbitrator "exceeded their powers." 9 U.S.C. § 10(a)(4).

Simmers' arguments fail. Again, this Court has already held that the various agreements at issue incorporated the AAA's rules. (Doc. # 33 at 13-14); see also JPay, Inc. v. Kobel, 904 F.3d 923, 937 (11th Cir. 2018) (reiterating that incorporating the AAA Rules in an arbitration agreement was sufficient to grant the arbitrator the power to decide questions of arbitrability because the AAA rules "gave the arbitrator 'the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement'" (citation omitted)); Airbnb, Inc. v. Doe, 336 So. 3d 698, 704 (Fla. 2022) (holding that the parties "clearly and unmistakably agreed that an arbitrator decides questions of arbitrability" where Airbnb's terms of service explicitly incorporated by reference the AAA Rules, and stating that "when an agreement

incorporates a set of arbitral rules, such as the AAA Rules, those rules become part of the agreement"), <u>cert. denied</u>, No. 22-102, 2022 WL 17408176 (U.S. Dec. 5, 2022).

And one such rule is AAA Commercial Rule R-47(d)(ii): "The award of the arbitrator(s) may include: . . . (ii) an award of attorneys' fees if all parties have requested such an award **or** it is authorized by law **or** their arbitration agreement." AAA Commercial Rule R-47(d)(ii) (emphasis added)[2]; <u>see</u> <u>also</u> <u>Fowler</u>, 579 F. App'x at 699 (explaining that the AAA rules "explicitly allow the arbitrator to award attorney's fees and costs" and that it was "meritless" for the petitioner to argue "that the arbitrator exceeded her authority by awarding costs and attorney's fees").

Here, Plaintiffs requested an award of attorney's fees and costs in their demand for arbitration. (Doc. # 85-2 at 24). And, indeed, Simmers' counterclaim filed in the arbitration contains a similar request under the heading "Notice of Intent to Seek Attorneys' Fees": "John Simmers

---

[2] At the time of the Final Award, the relevant section of the AAA Commercial Rules was numbered as Rule 47(d)(ii). Subsequently, although the substance of the rule remains the same, it was renumbered as Rule 49(d)(ii). <u>See</u> <u>https://www.adr.org/sites/default/files/Commercial_Rules-Web.pdf</u>. Likewise, before this case was initiated, this rule was previously numbered as Rule 43(d)(ii) in an earlier version of the AAA Commercial Rules.

gives notice of his intent to seek an award of his reasonable attorneys' fees pursuant to all statutes, contracts, and rules of procedure should the American Arbitration Association determine that his claims must proceed in this forum and in the event John Simmers prevails in this matter." (Doc. # 85-1 at 94); see also (Doc. # 85-4 at 3-4) (Simmers' prehearing brief, in which he explicitly requests attorney's fees as to twelve of the thirteen remaining counts of his counterclaim). Simmers unpersuasively suggests that this language in his counterclaim — clearly seeking that attorney's fees and costs be awarded to him if he prevailed — was not a "request" for purposes of AAA Rule 47(d)(ii). (Doc. # 82 at 15). But the language in his counterclaim is clear.

Furthermore, Simmers argues that "any request for attorneys' fees must still be present in a statute or a contract," even if all parties requested fees during the arbitration, because "AAA Commercial Arbitration Rule 47(d)(ii) does not create an independent basis for attorneys' fees." (Id.). Simmers is incorrect. The parties' requests for fees itself empowered the arbitrator to award fees and costs, as each of the three bases for awarding attorney's fees is independent in Rule 47(d)(ii). See AAA Commercial Rule R-

47(d)(ii) (explaining that attorney's fees may be awarded if "all parties have requested such an award **or** it is authorized by law **or** their arbitration agreement" (emphasis added)); see also CareMinders Home Care, Inc. v. Sandifer, No. 1:14-CV-03573-WSD, 2015 WL 4040464, at *4 (N.D. Ga. June 29, 2015) ("Both parties having requested an award of attorneys' fees, Rule 43(d)(ii) of the Commercial Rules applies, and the Arbitrator thus had the authority to include attorneys' fees in the Award and did not exceed his powers under Section 10(a)(4) of the FAA. Even if the Court assumes that the Arbitrator's decision to award attorneys' fees under Section 18.3 of the Franchise Agreement was in error, Rule 43(d)(ii) of the Commercial Rules, which is incorporated in the Franchise Agreement, independently empowered the Arbitrator to award attorneys' fees, and the Award is required to be confirmed for this reason."); Wells Fargo Bank, N.A. v. WMR e-PIN, EEC, 653 F.3d 702, 713 (8th Cir. 2011) (rejecting argument that arbitrator misapplied contractual provision and erroneously awarded attorneys' fees because all parties requested an award of attorneys' fees, and the arbitrator was authorized to consider the request under Rule 43(d)(ii) of the Commercial Rules); Ltd. v. Indyzen, Inc., 851 F. App'x 54, 55–56 (9th Cir. 2021) ("The arbitrator did not exceed his

powers in holding Mak personally liable for the award of attorney's fees. Under American Arbitration Association Commercial Arbitration Rule 47(d)(ii), an arbitrator's award may include attorney's fees if all parties requested attorney's fees prior to the award. All parties, including Mak, requested attorney's fees. The arbitrator could therefore award attorney's fees and hold Mak, as a non-prevailing party to the arbitration, responsible for paying them.").

As to Simmers' argument that the arbitrator's fees award included fees incurred in this Court and in the FINRA action in violation of Florida law, this argument alleges a legal error by the arbitrator. But, again, the FAA does not permit this Court to "look to the legal merits of the underlying award." White Springs Agric. Chemicals, Inc., 660 F.3d at 1283 ("These points on appeal essentially involve the same argument: the panel exceeded its powers by acting contrary to the law. We cannot, however, review the panel's award for underlying legal error. Even though White Springs presents its argument in terms of the FAA, it asks us to do what we may not—look to the legal merits of the underlying award." (citations omitted)); see also CareMinders Home Care, Inc., 2015 WL 4040464, at *5 ("Respondents simply argue that the

Arbitrator would not have awarded attorneys' fees if he had applied Georgia law correctly. That is not a reviewable claim under the FAA's highly deferential standard."). Thus, this argument fails.[3]

The Petition to Vacate the Fee Award is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiffs' Motion to Confirm Interim Arbitration Award (Doc. # 59) is **GRANTED.**

(2)   Defendant John Simmers' Petition to Vacate Arbitration Award (Doc. # 71) is **DENIED.**

(3)   Defendant John Simmers' Petition to Vacate the Fee Award (Doc. # 82) is **DENIED.**

(4)   The Interim Arbitration Award and Final Award are confirmed. The Clerk is directed to enter judgment in favor of Plaintiffs and against Defendant accordingly.

(5)   The Clerk is directed to **CLOSE** the case.

---

[3] Even if the Court could consider the argument, Simmers has not carried his burden of proof. The only case Simmers cites for this argument is a Florida opinion holding that a trial court cannot award appellate attorney's fees unless the appellate court has authorized such an award. (Doc. # 82 at 10-11) (citing Rados v. Rados, 791 So. 2d 1130, 1131 (Fla. 2d DCA 2001)). Thus, the procedural posture in that case is wholly different from the one presented here.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

17th day of January, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE